is 23-11163 Jonathan Singleton versus Secretary of the Alabama Law Enforcement Agency. And Mr. Overing, I see that you have reserved time for rebuttal, so when you are ready, you may proceed. May it please the Court, Robert Overing for the Secretary of the Alabama Law Enforcement Agency. And let me just ask you something right off the bat. For you to win, we can't be sitting in this courtroom, correct? We've got to move over to the en banc courtroom, and we consider Smith v. City of Fort Lauderdale, correct? No, Your Honor. We would like to be en banc and to get a definitive pronouncement, but we didn't. And in fact, you moved for initial hearing of this appeal en banc, correct? Yes, we did. So, you recognize you have an issue with Smith v. City of Fort Lauderdale, and I assume you'll tackle that first. Right. We have an issue with Smith, but we've also argued and maintained that it is inconsistent with the original meaning of the First Amendment, and the Supreme Court, since Smith, has made the original meaning of the First Amendment and its scope the test for whether certain speech is unprotected. But enough to abrogate Smith? So, the test for abrogation under Petit is whether the fundamental props of that decision have been fully undermined. I think demolish or eviscerate it is what we've said. The court has used language like demolish. I don't think there's a way to read the Supreme Court's recent cases in Vidal v. Elster and City of Austin v. Reagan National Advertising, and then, before that, Stevens, Brown, and Alvarez, and come away with the impression that any lower court can find speech is protected or not without reference to history and tradition, and that's what this court did. Well, that's certainly the case. I'm not sure it even did that. I think what it did was read Schemberg and gave what it thought to be a reasonable Schauberger and gave a reasonable reading of it as applied to the facts before it, which were a begging ordinance. And it would seem to me that as long as Schauberger, Schemberger, I'm bad with the pronunciation, but as long as that is still good law and I've not seen the Supreme Court recede from that or say that that's bad law, I have a hard time understanding how Smith couldn't also or another panel couldn't also have reached that conclusion or that that has been eviscerated or demolished. Well, the panel in Smith misread Schaumberg, and I don't think Schaumberg is our problem, but if the question is was it a reasonable reading and so is the panel's interpretation of Schaumberg... In other words, if the concept is you have to eviscerate every prop upholding a decision, that's the petite standard. I'm very familiar with it. You have to... And if the panel relied on a reading of that Supreme Court case and that Supreme Court case is still out there, then how is that... How has that been eviscerated? Now, if the Supreme Court had come and said, we have this new way of doing stuff and these prior cases are now no longer good law, I think we might have... You might be in the ballpark, but I'm worried that we're not in the ballpark. Well, the Supreme Court has applied a history and tradition test to cases involving solicitation, and so I think Reed v. Town of Gilbert and then Austin v. Reagan, both involving signage, are a kind of solicitation. You also have Williams-Uly v. Florida Bar in which the court referred to history and tradition, and so... Didn't Justice Scalia excoriate the court in Williams for not having an originalist reading in Williams? Not doing it well. As a former state court judge who ran for election, I'm pretty familiar with Williams, and as I recall, the court did not take an originalist approach in that case. The court paid lip service to history and tradition. I don't think it's the best example of the kind of historical analysis that's required by the Constitution, and I think the more recent cases, Elster and Austin in particular, are better examples of that. The court has supplanted the test for that initial question of whether some speech is protected with a history and tradition approach. Now, this court needs to, the panel needs to decide whether Smith v. City of Fort Lauderdale fully jettisoned and decided this question, and I don't think the City of Fort Lauderdale raised the precise argument that we're making here. But we don't have an overlooked... We have, there is no overlooked argument exception to the prior panel precedent rule, and that was also part of the problem. There's some good for that rule, but there's some bad, including this sort of situation, right? Right. But it's more than overlooked, because in a footnote in that decision, and after the court rejected our petition for initial hearing on Bonk, given more reflection on that case, there is a footnote that expressly declined to reach the standard scrutiny applied to  So I want to ask you about that, if we can get past this part for a moment. So the way this was litigated below, you all just sort of conceded, if Smith governs, meaning if there is this, if begging is within the ambit of the First Amendment, we lose. And I read that, especially with the footnote in Smith, to say that whether that's true, whether it's commercial speech, or whether it's not. I would have hoped that you guys could have made an argument to say, we think, we want to answer the question in Smith, this is commercial speech, and like in that case, we can satisfy the requirements of intermediate scrutiny. But no such argument was made below or here, right? We didn't have a commercial speech argument, but I think that the meaning and the scope of the First Amendment is not an issue that we can forfeit. The court's got to construe the First Amendment and apply it, and the court always retains the independent power to identify and apply the proper construction of governing law. It's not limited to the particular legal theories advanced by the parties. That's true. We have to get the law right, but we also sometimes take the ball as it sits, and there are lots of examples of us doing that. And so we certainly can't get the ball wrong, but I'm not sure it's wrong to say we're bound by prior panel precedent, and there's also the commercial speech doctrine still exists. The Supreme Court, as best as I can tell, has not jettisoned that. And so I'm... But the parties, by agreement and the way they litigate the case, the way they present the issues, can't change the proper test for the First Amendment. And that's kind of what we have here, where there is circuit precedent. Smith itself says that this is a content-neutral kind of regulation, that when you prescribe begging in some way, that's content-neutral. And they've said that it's content-based. The court below thought it was content-based, but that has no bearing on what this court's job is, which is to interpret and apply Supreme Court precedent and the law. Let's talk about Schomburg. Why... Imagine a hypothetical. Imagine a charity which employs those who it services in order to collect for themselves and for the charity itself. So let's take... It's Christmastime. Let's take those who sort of ring bells and collect money outside of areas. A lot of the folks who there are customers of the charity, and so benefit from the charity itself while also part of the organization soliciting money. Why is that not someone who's begging for themselves, but also doing so in the construct of giving a message, as the Supreme Court articulated in Schomburg? Well, Schomburg dealt with a charity that its primary purpose was advocacy. And Schomburg made its distinction very clear that there's a difference between the dissemination of information and ideas, the advocacy of causes on the one hand, and then mere solicitation for money being merely a conduit. So if you pay someone to go out who has no interest in propagating ideas and causes, but just to collect money, that was not protected. And Schomburg explicitly said that, and said that the statute might be enforceable against those groups, but it was drafted in an overbroad way. But why do you assume that, and we have a facial challenge here, so obviously if there's something that falls within it, then it has to fail, but why is it assumed that someone who's begging isn't also communicating about sort of the state of the economy currently or the way that the homeless are treated? Why are those things necessarily not communicated by the homeless begging on the side of a particular roadway? I think that gets the burden backward, and a facial challenge, they've got to show that begging necessarily communicates a message or speech deserving of First Amendment protection. It's possible that begging can be accompanied by constitutionally protected speech, but it is not necessarily so. And that's what the Supreme Court said in Schomburg, was that this is speech characteristically intertwined with constitutionally protected speech. Why is it not necessarily so? Why is it not, if I am begging, why am I not communicating not just I need money, but that I'm a homeless person and look at me. In other words, it's very easy for someone who's homeless to either go to a shelter or get private charity, or decide on their own that they want to be out on the street and begging at a public roadway where people are coming by. Isn't that act a public act? People could beg for all manner of reasons and mean to communicate or not communicate. Someone could be sleeping on the side of the highway and have a cup and that could be begging, but there's no discernible message. And the Supreme Court, when talking about what is expressive, has talked about the... Well, the folks here, as I recall, the stipulation said that the folks here, including the plaintiff, is holding a sign. And so that at least communicates something. Some signs communicate something. Some plaintiffs hold signs, yes. But the question here is whether all begging is constitutionally protected speech. And so the fact that we can come up with all manner of examples where begging is accompanied by expressive speech or intertwined doesn't mean it's necessarily so. And courts have come out differently on that question. So the Second Circuit's original decision on this issue in Young said that begging is not necessarily expressive and then later said in Loper, well, usually it is. And so courts haven't engaged in that kind of empirical question. I think it's what we're asking from this court is a recognition that there is some core, some heartland exception based on the history of all the original states and the federal government prescribing some amount of begging. What do we do with the cases that have allowed a non-originalist look at First Amendment exceptions that typically and historically would not have been covered? For example, defamation is the one that I think is the easiest example. There's at least a portion of defamation for which at common law clearly would have been prohibited and was, but that is we believe to be or we have told is constitutionally protected under the First Amendment, right? So defamation has always been one of these historical categories. And while the contours of what constitutes defamation have changed over time, New York Times versus Sullivan and Gertz changed the standard, the category itself is part of an unbroken definition. So isn't the response, and I think Amicus makes this very well, which is begging, to the extent it's one of them, it's informed by current practice. And current practice has carved out through the wealth of case law that we have from Schomburg on through the circuits and carving out public begging on the side of a roadway. No, because most states and municipalities still have some restrictions on begging. And so the category has remained intact. And if we're talking about the original meaning of the First Amendment, we've shown not just 200 years, but 500 years of precedent. I think this category is more firmly rooted in history and tradition than perhaps any of the other exceptions in First Amendment law, even more so than libel, certainly more than child pornography. The historical record here is abundant. And the Supreme Court said in Brown that all the state has to come with is persuasive evidence that its law is part of a long, if heretofore unrecognized, tradition of prescription. If Alabama's begging laws aren't part of a long tradition, then I don't know what will qualify. Thank you. And you will have three minutes. Mr. West. May it please the Court. My name is Micah West, and I'm counsel for Plaintiff Jonathan Singleton. This appeal is foreclosed by the prior precedent rule. Taylor conceded that in below in not opposing summary judgment when he agreed that Smith binds this court. In Smith, the court held that begging is speech entitled to First Amendment protection. This court should apply that rule and does not need to decide anything else to affirm the district court's judgment. Isn't your opposing counsel right that we have an obligation to get the law right? In other words, you're right. One, you're certainly right about everything you've said. There's nothing that's disputed. But we also have law which says that the parties can't concede their way into legal error for us. We are required to get the law right. And so if the law is that new categories have to be analyzed in this way, why do we not need to analyze it in that way? I'll answer that in two ways, Your Honor. One, under the prior precedent rule, the court is bound by an earlier panel decision, even if it's convinced that it's wrong. And second, the Supreme Court has never said that tradition alone is sufficient to carve out a new category of speech from the First Amendment's protections. Instead, as we were discussing earlier, the courts often said the opposite, right? In countermeasure, the court said that it's often insisted on protecting even historically unprotected speech. Blasphemy and profanity are two other examples. I think there are some examples. But what your opposing counsel said in Brown, and certainly the more modern practice, is to start, at least, from history and tradition and then work from there. And in doing so, it's hard to see how opposing counsel is not right about how begging has been treated during the common law and, frankly, far before that. Well, I would disagree, Your Honor. When the court was looking at historically unprotected categories of speech, it said that those traditional categories have been unprotected from 1791 to the present. We have nearly 100 years of Supreme Court precedent protecting financial solicitations. Eight Federal Circuit courts, including this one, had no problem concluding— I'm not sure you can include Supreme Court solicitation cases, especially as Schomburger has laid out. I think your better argument is the one you were just making, which is the circuits. But that really hasn't started until about the 90s. I mean, how is that the kind of longstanding, 100-year tradition of an exception that would qualify as some sort of exception to history and tradition? Well, I read the Schomburg line of cases much more broadly than my opposing counsel. In those cases, they talked about how solicitation is characteristically intertwined with the conveyance of ideas and even messages, and you can't disaggregate or separate out the request for financial solicitation from those messages. And a person asking for help to meet their own needs, as you were saying, Judge Locke, is communicating a message that they're needing help. But Schomburg was clear that the fact that it was done on behalf of an organization seeking that was part of it. I mean, it was clear that those things were intertwined. That doesn't mean that a court wouldn't extend Schomburg or that it was inappropriate to extend it to this situation, but it's not enough to say that Schomburger held that financial solicitation is protected by the First Amendment and so begging is. I don't think that one works directly from the other, does it? Well, the way I would answer that is, Your Honor, just as the First Amendment protects a religious organization taking up alms for the poor, it protects someone who's asking for alms for themselves because otherwise it would violate other First Amendment principles like prohibitions on speaker-based discrimination. Your opposing counsel is right, given that this is a facial challenge that the burden is on you to show in all instances that it's protected. How can we say that all begging incorporates that? There is no doubt that some individual beggars are trying to communicate something, either through a sign or through their actions in some way. But some people just want money. Even a peer request for financial assistance is communicating about a person's need and turning to another person to say that they are looking to them to help them meet their needs to survive. That's communicating a message. Does the fact that Smith didn't answer and left open the fact that this could be a commercial transaction indicate that it isn't really trying to communicate the things that you're talking about, that it really is just about money? I mean, that seems to be a strong indication that the Smith court thought that. Well, what Smith, respectfully, Your Honor, I disagree with that implication. What Smith said was the parties below didn't raise that question so he was leaving it unanswered. But the fact that it left unanswered, meaning that it could be treated as a financial transaction, an economic speech, as opposed to the things that you're talking about, which is communicating a larger message about poverty and charity. Well, your commercial speech is protected speech under the First Amendment. It is, but it has a lot less of historical pedigree and is treated very differently. It may be, but as Your Honor indicated, Taylor did not raise that below. So to the extent he's being raised now, it's forfeited. What I would suggest that the court do to the extent that it's concerned about that is it could do exactly what it did in Smith and say it was not raised and the argument was forfeited. Let's assume for the moment that I think that it is a history and tradition test and that is what we play. And let's assume in that world that Smith doesn't exist. Why would the state be right or why is the state wrong and you're right? So Taylor is relying on these colonial era vagrancy laws, which are very unlike the laws that we've challenged in this case. So those colonial era vagrancy laws were targeted at a class of individuals. His response to that, though, he addresses that in the reply. And his response to that is, yes, some of the statutes reference vagrancy and you point to those. But those same statutes then say it is to be a vagrant or we prohibit vagrancy and the act of begging or begging. In other words, those statutes disaggregate those two things, vagrancy, which is one independent crime, and then begging, which is an act-based as opposed to status-based crime. Do you not agree with that reading of the historical record? I don't. So some of those colonial era vagrancy laws, they criminalized begging, but what they were after was idleness. And so they were trying to force people to work who could work. They were targeted at the editor's notes that Alabama's vagrancy or Alabama's begging statute goes into this pretty clearly. That's really the purpose of the laws. I don't think anyone disputes it. I don't think the state disputes it. I don't think that is disputed. But the law itself, do you dispute targeted the act of begging independent of vagrancy? I don't think so, Your Honor. And we can look at that by looking at Alabama's vagrancy law as an example. And there are others, North Carolina, South Carolina, because it made employment an affirmative defense to a vagrancy charge. So you could ask for help so long as you could demonstrate that you wouldn't become a public charge. By contrast, Alabama's laws today criminalize speech, and they criminalize everyone who engages in that speech, whether they're sheltered or unsheltered, employed or not employed. And there's a second statute at issue in this case, what we refer to as the pedestrian solicitation statute. And that criminalizes all charitable solicitation, whether by a religious organization or by charity or by a person experiencing homelessness. There's no historic analog for that kind of broad-based restriction. What about the common law? So you pointed out to some of the early state laws. I think the Alabama one is from the early 1800s. What about the common law statutes and the pre-common law statutes? Those seem to be specific as to begging independent of vagrancy. Are they not? Well, I mean, the vagrancy statutes criminalize a whole swath of activity from juggling to fortune-telling. But other examples are North Carolina law, the South Carolina law. They also made an affirmative defense. If you could demonstrate that you were employed, they were, again, targeted at a motive for life, right? Like, if you could demonstrate that you were a security, you weren't criminalized, you could ask for help. It was about something very specific and something very different than Alabama's law. But that's still an act. That's not a status-based crime, right? I mean, that's still an act, isn't it? It, well, it was. Because that was where your argument started, was these are status-based laws which are treated a bit differently rather than act-based laws or conduct-based laws, right? Yeah, but they were, yes, there are, but they were targeted at very specific individuals, right? Those who were likely to become public charges, which are just not Alabama's laws today, which criminalize a much broader swath of speech. You know, and I'll point, Your Honor, that the Court has recognized only a few categories of unprotected speech, and it said that it's been especially reluctant to carve out new categories of speech. I think that's fair and right. I mean, it should be reluctant, because what we're saying is it doesn't even warrant discussion under the First Amendment. So I think that's a fair reluctance, but that still doesn't mean that none other exists other than those that are there, and I think the fact that they have acknowledged that some could exist indicates that they could. And so having that conversation, how is this not more, wasn't restricted to a greater extent? I mean, your opposing counsel ended by saying this was restricted to a greater extent going even before the common law, 500 years, than libel and child pornography, which probably didn't even exist, frankly, at the founding. But that this is more prohibited than those things. I would say that there's no longstanding tradition of regulating speech of begging. Like, there may have been a tradition of regulating and criminalizing poverty, those likely to be. I know, but the argument is, I assume the argument is, that by passing the First Amendment and understanding that begging laws were common both before and after the founding, that the First Amendment didn't cover those things. So to the extent they communicated anything, that was not covered by the First Amendment, and to the extent it's just prohibiting the act, that also wouldn't be protected. Isn't that the argument? There is concern about relying on the colonial era laws, as you suggested, Judge Locke, because the First Amendment had not been incorporated against the states, and also because the 14th Amendment had not been incorporated. And that firmly rejected the notion that in vagrancy laws, that there are classes of individuals who have no constitutional rights. And the Supreme Court has not examined colonial era vagrancy laws in the context of the First Amendment, but we're not writing on a blank slate here. We have some idea of how the Supreme Court views these colonial era vagrancy laws, and they've treated them as part of the court's anti-canon, right? In Chicago v. Morales, the court said, vagrancy law's pedigree doesn't ensure their constitutionality. I'm just not sure vagrancy, and you're right. I mean, I think your discussion is fair in the brief, but I think the state has persuasively distinguished vagrancy from begging, which are two different things. One is sort of status and loose, and frankly has been done away with, and the begging statutes, even to this day, we have begging cases all the time. Almost every municipality has some sort of aggressive begging or begging in this location. I mean, the Smith Regulation, which we upheld, still exists in Fort Lauderdale today in that same area. The begging statutes were targeted at particular individuals. It wasn't just the vagrancy laws. I mean, the umbrella was a vagrancy law. They were targeted at a mode of life. And I'll note, Your Honor, that the court has not been adding to the categories of unprotected speech. In fact, it's rejected every attempt over the last 40-plus years to add to those new categories. And I'll give you a couple of examples, right? In Brown, for example, the court rejected attempts to compare obscenity to depictions of physical violence or an alvarez, modern laws criminalizing false statements about military service, so historically unprotected categories. Counterman, I'm sure, is one of those too. Yeah, another example. And that tells us that the court is, again, really reluctant to add to these new categories. It may have recognized that there might be some possibility that there might be new categories. But I think a fair reading of those cases is that really those categories are pretty well-defined and the court's not really looking to add to those or inviting the government to restrict speech in this way. And I'll end by just pointing to what Justice Scalia said in Brown. I think that that's really instructive. He said, violent video games are protected under the First Amendment because they communicate ideas and even social messages. That, Justice Scalia said, suffices to confer First Amendment protection. And the speech at issue in this case is also communicating ideas and social messages about matters of public concern, hunger, poverty, homelessness, illness. Mr. Singleton's sign, the name plaintiff, is an example. He held a sign saying, hungry, help me, I'm homeless, this could be you. Right, that was communicating a message that many of us live at the edge of homelessness in our society. And if there is any North Star in First Amendment jurisprudence, it's this. The government has no power to interfere with the marketplace of ideas. In short, what Taylor is arguing is extraordinary. He's not only asking this panel to overturn Smith, which binds this court, but nearly 100 years of Supreme Court precedent protecting financial solicitations, which eight federal circuit courts have no problem concluding protects the very speech at issue in this case. I would just ask that this court affirm the district court's unopposed, unopposed entry of summary judgment. Thank you. Thank you, Mr. West. Mr. Overing, you have three minutes. Our argument is not extraordinary. Our argument is to return First Amendment doctrine to a fixed and objective criteria, history and tradition, and for this court to uphold some degree of regulation of the kind that has existed for centuries, perhaps millennia, going back to ancient Greece. The only argument on the historical record presented by the other side is this argument about status, and some laws criminalize status, like being a beggar or vagabond or rogue or vagrant, and others penalized begging as such, and I think Professor Quigley's amicus brief is pretty comprehensive on this. Even in those laws that didn't criminalize or penalize in any way begging as a verb, begging would still be used as evidence of the crime, and so those laws tell us something about what the founding generation thought to be protected speech. Laws dealing with status, the Supreme Court has said, tell us something about speech. So a law saying you can't be a communist implicates free speech, or you can't be a Christian, or laws distinguishing between individual campaign contributions and committee campaign contributions. The status, and I think was conceded by the other side, identity-based distinctions can implicate the First Amendment, and so all of those laws could not coexist with a view that the freedom of speech includes a right to beg, and this Court's decision in Smith, the one-sentence line in Smith didn't analyze any of these arguments to the extent that it seemed like we were making a commercial speech-type argument. I just want to be clear, we're not saying that it is commercial speech. All I was saying about Smith was that in footnote two, the Court declined to decide the proper level of scrutiny, and so it left open what that level should be. We think that the level should be rational basis, and so to the extent there's some room to maneuver, the Court should rely on history and tradition. The state doesn't need a historical twin or a dead ringer. It needs some analog, some predecessor. Then, finally, the Court was asking about Counterman and New York Times versus Sullivan and how the Supreme Court has seemed to change the test for categories over time. It wasn't in our brief, but in R.A.V. versus St. Paul at page 383, the Supreme Court said, yes, our decisions since the 1960s have narrowed the scope of traditional categorical exceptions for defamation and for obscenity, but a limited categorical approach has remained an important part of our First Amendment jurisprudence. This Court should apply that limited categorical approach in light of the historical record and find that there is some begging which is not constitutionally protected speech and reverse. Thank you. Thank you both. We have your case under advisement, and court is adjourned.